## DECLARATION OF ERIC ECCLESTON
## IN SUPPORT OF COMPLAINT FOR FORFEITURE IN REM

### INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), United States Department of Justice, and have been so employed since May 13, 2018.  I am currently assigned to the Minneapolis Division, Minot Resident Agency.  My duties include, among other things, the investigation of major crimes occurring within Indian Country.

2.      Prior to my current assignment I was assigned to the Newark New Jersey Division's Health Care Fraud Unit, and I was a law enforcement officer with the Sitka Police Department in Sitka, Alaska, from August of 2013, to September of 2017, and with the Vancouver Police Department in Vancouver, Washington, from October of 2017, to April of 2018.

3.      Throughout my career in law enforcement, I have participated in numerous investigations involving the use of telephones, computers, and the internet.  During this time I have, among other things, conducted physical surveillance, executed search warrants, utilized cellular telephone location data, and conducted interviews of cooperating witnesses and informants.  I have received training in various aspects of law enforcement, including the investigation of financial and health care fraud offenses, search warrant applications, the execution of searches and seizures, computer crimes, and more.  Investigations in which I have been involved have resulted in numerous arrests and convictions.  I have not included every detail of every aspect of my training, education, and experience but have highlighted those areas most relevant to this declaration.

4.      The information in this declaration is being submitted for the limited purpose of supporting a civil complaint, and therefore I have not included each and every fact known concerning this investigation.  I have set forth only the facts believed to be necessary to establish a reasonable belief that the United States will be able to meet its burden of proof at trial.  Where statements of others are set forth in this Declaration, they are set forth in substance and are not verbatim.

### PROPERTY SUBJECT TO SEIZURE AND FORFEITURE

5.      This declaration is submitted for the limited purpose of supporting a Civil Complaint for Forfeiture In Rem made by the United States of America authorizing the seizure and forfeiture of the following:

> A. Approximately $162,759.42 in United States Currency (amount reflects account balance as of October 10, 2023), held in Navy Federal Credit Union bank account number 7123490844, 820 Follin Lane SE, Vienna, VA 22180, account holder – Reggie Cardone;
>
> B. Approximately $49,931 in United States Currency (amount reflects account balance as of December 13, 2022), held in Regions Bank account number

       0316671546, Regions Riverchase Operations Center, 2090 Parkway Office Circle, Hoover, AL 35244, account holder – Reggie Cardone;

C. Approximately $385,799.11 in United States Currency (amount reflects account balance as of October 17, 2023), held in Truist Bank account number 1340017411674, Truist Bank Attn: Corporation Service Company, 2626 Glenwood Avenue, Ste 550, Raleigh, NC 27608, account holder – Reggie Cardone; and,

D. $26,000 First National Bank of Pennsylvania Cashier's Check Paid to the Order of Reggie Cardone, currently in the possession of the Federal Bureau of Investigation.

6. The undersigned believes there is probable cause to believe the above-referenced funds were derived from proceeds traceable to violations of a specified unlawful activity, specifically, proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud), or property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 or 1957 (money laundering) and therefore subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## FACTS SUPPORTING PROBABLE CAUSE

7. According to Alysia Lacounte, the Legal Counsel for the Tribal Office of the Turtle Mountain Band of Chippewa (TMBC), Belcourt, North Dakota, the TMBC had a contract with Woodstone, Inc. (Woodstone), a company based out of Brooklyn Park, Minnesota, to construct a water park near the Sky Dancer Casino in Belcourt, North Dakota, within Indian Country. The water park construction was projected to cost approximately $16 million dollars. The TMBC anticipated a monthly billing schedule between the dates of February 2020 through November 2022.

8. Lacounte explained that the tribe's point of contact with Woodstone was Tom Ollman (Ollman), the project director. Woodstone's Chief Financial Officer (CFO) was Derek Ellingson. Shawn Poitra (Poitra), the TMBC CFO, received invoices from Ollman when a payment was due. The invoices were titled "application and certificate for payment" and the invoices listed the amount due, were signed by Ollman, and were notarized. The payments were then generally wired to Woodstone's financial account by TMBC.

9. According to Lacounte and email documentation provided by Lacounte, Poitra received an invoice for September 2021 labeled "Woodstone Pay-app #9" and on November 3, 2021, at approximately 1:55 pm, Poitra received an email from email address mailto:tollman@woodstoneinc.com, that Poitra believed to be from Ollman, asking for the status of payment 9. Poitra replied that he had not heard from the TMBC Tribal Chairman Jamie Azure (Azure). The investigation revealed this email was not sent by Ollman, but rather was sent by an unknown individual engaging in a business email compromise scheme.

10. On November 4, 2021, Poitra received another email at approximately 8:40 am from email address mailto:tollman@woodstoneinc.com, that Poitra believed to be from Ollman. The

email asked for Poitra to wire the payment that day and to use the trust account details that were attached to the email. At approximately 11:26 am that day, Poitra replied that he would send the wire. At approximately 12:34 pm he received another email from mailto:tollman@woodstoneinc.com asking him to confirm that the payment was wired into the trust account and Poitra replied at approximately 12:59 pm stating the bank needed an address for the company listed on the wire instructions, "Reggie & A LLC". At approximately 1:07 pm Poitra received a reply from mailto:tollman@woodstoneinc.com stating the beneficiary address was 512 West Nash Street, Spring Hope, North Carolina 27882. The trust account details were new and Poitra had not wired money to that account previously.

11.   On November 4, 2021, Poitra completed an outgoing wire transfer order in the amount of $1,224,984.00. The wire was sent from the TMBC account to J.P. Morgan Chase Bank Account Name: Reggie & A LLC, Account Routing Number 07200326, Account Number: 776912138 ("the Chase Account"), and Address: 512 West Nash Street, Spring Hope, NC 27882.

12.   On November 8, 2021, Poitra received an email from Ollman (the real Ollman) stating the wire transfer was not completed for payment number 9 and asking Poitra to look into it. On November 9, 2021, Poitra received another email from Ollman (the real Ollman) stating Woodstone had not yet received the transfer.

13.   Bank records indicated "the Chase Account" holder was Reggie & A LLC with REGGIE CARDONE (CARDONE) identified as the account signer. Records reveal "the Chase Account" was opened by CARDONE on October 15, 2021, and a $100 deposit was made into "the Chase Account" at that time. After "the Chase Account" opening, a deposit of $3,000 was made on November 1, 2021, and on November 4, 2021, "the Chase Account" received an incoming wire from the TMBC in the amount of $1,224,984.00. The day after this deposit, November 5, 2021, a cashier's check payable to CARDONE was issued from "the Chase Account" in the amount of $350,000 and was subsequently deposited that same day, into Navy Federal Credit Union (NFCU) Account Number 7123490844, and a $20,000 wire transfer was sent from "the Chase Account" to NFCU Account Number 7124228300 collectively ("the NFCU Accounts"), which were also held by CARDONE. Furthermore, on November 9, 2021, and on November 26, 2021, a $140,000 wire transfer and a $192,000 wire transfer, respectively, were made to one of "the NFCU Accounts" (Account Number 7123490844).

14.   On November 15, 2021, after the deposit of the $350,000 cashier's check and the $140,000 wire transfer into NFCU Account Number 7123490844, a wire transfer for $5,000 and a wire transfer for $250,000 were made to a virtual currency trading account held by CARDONE at FTX US (FTX US). On November 16, 2021, and November 30, 2021, additional wires of $233,500 and $197,000, respectively, were made to the CARDONE account at FTX US from NFCU Account Number 7123490844. Records from FTX US show that CARDONE registered the account to the email address dnr3535@hotmail.com. Each of the funding payments to FTX US were immediately followed by a purchase of an equivalent amount of Bitcoin and then the Bitcoin was transferred to a virtual currency wallet that was held outside of the FTX US trading platform.

15. In addition to the funds from TMBC, Cardone sent additional proceeds to FTX US totaling $2.3 million. Each of these deposits was followed by the purchase of Bitcoin and transfer to a virtual currency wallet outside the FTX US platform. Tracing of the Bitcoin funds through the blockchain indicates that funds, transferred from the CARDONE account at FTX US, were sent to multiple unknown recipients and to multiple virtual currency exchanges domiciled outside the United States. Some of those exchanges include MyPatricia.co, Binance, Luno and Gate.io. Records obtained from Binance and Gate.io reveal that the funds transferred from the CARDONE account at FTX US were received by individuals located in Nigeria and South Africa.

16. On January 26, 2023, FBI Special Agents interviewed CARDONE and learned that she had been communicating with an individual she met through Zoosk, an online dating service, who told her his name was Antonio Nolan Teller (Teller). She started communicating with the individual claiming to be Teller around March of 2021. Teller used phone number 309-306-9491 on Telegram initially, but changed it to 920-643-1438, and email addresses constunolan@gmail.com and ntellerantonio@gmail.com. According to CARDONE, Teller needed money and requested that CARDONE make an investment and he would pay her interest back. CARDONE initially wired Teller $30,000 from her Wells Fargo Account. Teller did not send CARDONE payments back, but he also convinced CARDONE to take out some loans and open up a business account called Reggie & A LLC. Navy Federal is where all of the wires went through and into a cryptocurrency account. Teller also convinced CARDONE to open more bank accounts. Teller would tell CARDONE there was money coming and CARDONE would get checks through FedEx from people that Teller told her were investors. Teller told CARDONE that the checks were made out to CARDONE so she could forward the money on and turn it into cryptocurrency. CARDONE would go into Navy Federal Credit Union and make a wire transfer into the cryptocurrency accounts. CARDONE reported that J A Transport was one of Teller's investors and Bustin and Associates was a woman named Beverly Bustin (Bustin) in Florida who was another investor. CARDONE spoke with Bustin, who was also duped, and her money was still in the Regions account.

17. After CARDONE spoke with the local police chief and was informed that she should not speak with Teller, CARDONE continued communication with Teller. CARDONE has reportedly not sent any money to Teller since speaking with the local police chief.

18. According to a report from the FBI's National Threat Operations Center, on September 1, 2022, Justin Omanoff, the registered agent of BLUEDOGSUPPLIES STORE INC. (according to sunbiz.org, an official State of Florida website for the Florida Department of State Division of Corporations, BLUEDOGSUPPLIES STORE INC. is the successor name to JD FUTURE ENTERPRISES, INC.) reported that his business was the victim of business email compromise resulting in a financial loss of $385,729.81. The funds were sent on August 15, 2022, to Truist Account Number 1340017411674 ("the Truist Account"), and the name on the account was Reggie & A, LLC. An FBI Forensic Accountant confirmed that this deposit into "the Truist Account" was observed in records received by the FBI from Truist Bank. The Truist Account had a balance of $69.30 prior to the wire from JD FUTURE ENTERPRISES, INC. No additional transactions have occurred on the account, leaving the account with an ending balance of $385,799.11.

19.     According to a complaint received by the FBI's Internet Crime Complaint Center on September 2, 2021, Bustin reported that she had been "conned" into sending money to Teller and that the money she sent was sent to CARDONE to one of "the NFCU Accounts" (Account Number 7123490844) between May 27, 2021, and July 15, 2021.  According to another complaint received by the FBI's Internet Crime Complaint Center on September 20, 2022, Bustin's family member, Christopher Arthur (Arthur), reported that he believed she was being scammed out of large amounts of money.  Arthur reported that Bustin had been communicating with Teller online and that Bustin had been sending money to accounts that are owned by CARDONE.  The wire transfers were made into one of "the NFCU Accounts" (Account Number 7123490844) on July 29, 2021, in the amount of $8,000 and on March 9, 2022, in the amount of $113,035.00 and a Regions Bank Account, with Reggie & A, LLC as the account name, on October 15, 2021, in the amount of $10,519.29.  An FBI Forensic Accountant reviewed the NFCU Accounts and records obtained from Regions Bank for Regions Account Number 0316671546, owned by Reggie Cardone ("the Regions Account"). The FBI Forensic Accountant observed activity consistent with the reports above and determined that Beverly Bustin sent Cardone over $1 million.

20.     The FBI Forensic Accountant also observed that in March of 2022, Bustin and Associates wired $50,000.00 into "the Regions Account" which appears to have been frozen after the wire.  The Regions Account had a balance of $34.00 prior to the wire from Bustin and Associates and has had no further deposits since then.

21.     According to an FBI Forensic Accountant, after reviewing bank records provided by First National Bank for account number 734375868 ("the First National Bank Account"), an ACH transfer into the account from "Eastern Excavati" was observed.  The transfer was in the amount of $128,182.00 and it cleared on October 7, 2022.  The First National Bank Account had a balance of $82.83 prior to the transfer from "Eastern Excavati".  The records reveal that on October 11, 2022, $97,000.00 was then wired to one of "the NFCU Accounts" (Account Number 7123490844) and a $26,000 cashier's check was remitted to CARDONE.

22.     A review of the NFCU Account Number 7123490844 shows that prior to the $97,000 wire from the First National Bank Account, the account had a balance of $104,229.19.  The account subsequently received a deposit of $3,100.00 from an individual named Larry McCullough Jr. and a deposit of $41,200.00 from a Citizens Bank official check remitted by unknown entity. Cardone subsequently wired $14,000 to Crypto.com, a cryptocurrency exchange. Navy Federal Credit Union also withdrew $68,773.29 due to a claim of forgery related to an earlier deposit from an individual named Cecelia Bisset.

23.     During interviews with the FBI, CARDONE reported there were funds that were a part of this scheme that do not belong to her, and those funds are frozen in several accounts under her name. According to CARDONE the frozen accounts include "the NFCU accounts".  After speaking with an NFCU fraud investigator, FBI Agents confirmed that NFCU Account Number 7123490844 contained $162,759.42 as of October 10, 2023, and the account had been frozen.  Also, Cardone identified an account at Regions Bank in her name, (believed to be Regions Account Number 0316671546).  As of October 20, 2023, "the Regions account" had a balance of

$49,851.00 according to a Regions Bank Corporate Security Representative. According to an email on May 8, 2023, from a bank internal investigator the account had been frozen. CARDONE reported that the funds in "the Regions Account" belonged to Bustin. CARDONE believed that there were funds in an account at Truist Bank (believed to be "the Truist Account", which as of January 31, 2023, had a balance of $385,799.11, and according to a bank investigator nothing had changed with the balance as of October 17, 2023) which did not belong to her. CARDONE also reported there was a cashier's check that was from funds that did not belong to her. The cashier's check was in the amount of $26,000 and was from "the First National Bank Account". Cardone turned over this $26,000 check to the FBI.

24. Based on the information set forth in this declaration, probable cause exists to believe that the funds contained in three bank accounts and a cashier's check as specifically described herein in paragraphs 5A – 5D, are proceeds from wires intended to defraud, are involved in money laundering, and that all of the funds involved in that offense are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). Accordingly, your declarant submits that there is a preponderance of the evidence that the currency and cashier's check described in paragraph 5A – 5D are both proceeds from a scheme to defraud and involved in money laundering.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  February 26, 2024

_____
Eric Eccleston, Special Agent
Federal Bureau of Investigation
Minot, North Dakota